MURRELL & PAUL *vs.* SAMUEL WATSON & others.

## October Term, 1873.

PRO CONFESSO ORDER, EFFECT OF.—A complainant, under a *pro confesso* order, is bound by the concessions of his bill, even if put in the form of supposition upon certain facts, which facts are established by the evidence.

ORDER OF REFERENCE, CONSTRUCTION OF.—The general language of an order of reference must be construed in connection with the pleadings, and, therefore, a requirement on the master to report debts due from certain persons for the land in controversy, " or from any other person," will embrace only such persons as are parties to the suit.

LIEN—EFFECT OF RECITAL IN A DEED.—A recital in a deed that certain persons named " hold a lien which is not impaired by this deed," only gives notice of the lien, without changing it in any way, or giving a new lien.

PAYMENTS, APPLICATION OF.—C. W. & Co. sold lands to certain persons, who afterwards united in forming the Oak Vale Company, to each person one undivided share in severalty, reserving a lien on the share thus conveyed for the purchase-money agreed to be paid for it; the Oak Vale Company sold to third persons, reserving a lien for the purchase-money on the whole tract, and these persons paid to W., who was a member of C. W. & Co. and of the Oak Vale Company, a sufficiency of the purchase-money due from them to the Oak Vale Company to satisfy the original purchase-money due from the latter company to C. W. & Co. *Held,* that the law would not, without more, apply the payments to the satisfaction of the last named debt.

*E. H. East,* for complainants.

*John Reid,* for Watson.

THE CHANCELLOR :—The complainants were sureties for the defendants William L. Nance and Kimbro upon notes given for the purchase-money of 5,010 acres of land, and, as such sureties, were compelled to pay part of said purchase-money. Nance afterwards bought Kimbro's interest in the land, and conveyed the whole land to trustees to secure complainants and one Andrew Gregory, as his sureties in said purchase, and also to secure an individual debt due to complainant Murrell. One object of the bill was to set aside certain sales of the lands of complainants made under executions issued upon judgments recovered on some of the purchase-notes as aforesaid, but the judgments having been since paid by the complainants and their principal, that part of the bill is abandoned. Another object of the bill is to subject the 5,010 acres to the satisfaction of the purchase-money under the contract of sale as aforesaid, and to the indemnity

of complainants as sureties, and, for this purpose, to foreclose the deed of trust made by Nance as aforesaid. The bill asserts that the land is more than sufficient to pay off the purchase-money still remaining unpaid, and prays that said land be sold, "and the proceeds applied to the satisfaction of all the *foregoing debts* which are a lien upon it according to their priority." The "foregoing debts," as shown by the bill, are only the debt due to the vendors of Nance and Kimbro, and the debt mentioned in Nance's deed of trust.

On the 16th day of June, 1870, a decree was rendered in this cause upon the bill and answer of W. L. Nance, and *pro confesso* as to all the other defendants, and exhibits, in which it is recited as appearing to the court that Nance and Kimbro bought the said 5,010 acres, on the 31st of March, 1860, of the Oak Vale Barrel Company and their co-defendants, the members of said company, naming them, and took a deed therefor which was duly registered ; that the consideration of said purchase consisted of a lot on Maple street in South Nashville, conveyed to W. Barrow, one of said vendors, in trust for all of said vendors, and three notes at one, two and three years from date, drawn by Nance and Kimbro and endorsed by complainant Paul and defendant Andrew Gregory for $10,000 each, "and to secure the payment of which, and any notes substituted for them, a lien was retained upon the land conveyed ;" that on the 1st of March, 1865, Kimbro conveyed his interest in said land, etc., to Nance (with certain reservations not material to the controversy), in consideration of Nance assuming and paying the debts of Nance and Kimbro growing out of the purchase. That Nance took up the three notes for $10,000 each by conveying to his vendors a lot in Nashville and a lot in Edgefield at $8,400, and giving three notes of Nance and Kimbro for $7,200 each, one of which notes was endorsed by complainant Murrell, and the other two by Paul and Gregory ; that judgment was recovered against the complainant Murrell on the note endorsed by him, which judgment was paid partly by him and

partly by Nance, but in what proportions does not appear; that upon one of the notes endorsed by Paul and Gregory judgment had also been recovered and been in part paid by Paul, and the other note had been paid in full. The decree then provides thus : " And it being stated in the bill that perhaps the title to the lot in Edgefield conveyed by the said William L. Nance to the Oak Vale Barrel Company, or to the defendants composing said company, has failed, and that said company or individuals have never received any benefit therefrom." It is therefore ordered that the clerk and master " report the exact state of the facts, and how much and to whom is owing any money which is due from said William L. Nance, or Nance and Kimbro, for said land, or from *any other person, and which is a lien on said land*, and the nature and priority of the liens. * * * Until the coming in of said report, other matters are reserved. It being understood and agreed that the *pro confesso* order heretofore taken shall not estop Watson and others from setting up any prior lien upon the land as original vendors, and the clerk and master will report how much either said Murrell or said Nance may have paid upon said land." The decree further provided, by agreement of parties, for the sale of the tract of 5,010 acres of land, and the same has been sold and the sale confirmed. The decree, it will be noticed, implies that the three notes for $10,000 each were taken up by Nance after his purchase of Kimbro's interest in the land. In fact, however, as the proof shows, the change was made in a few days after the original purchase by Nance and Kimbro, the new notes for $7,200, each bearing date the 21st of April, 1860, and the deeds to the lots in Nashville and Edgefield being dated the 2nd April, 1860. In other respects, the recitals of the decree are in accordance with the allegations of the bill, and with the facts.

Under this reference, the master has reported that there is due from William L. Nance to his vendors, $5,725.95, being the value put upon the Edgefield lot in the transaction of the 21st of April, 1860, with interest, that lot having

been lost to the vendors by reason of the fact that Nance had never paid for it, and the lot was subsequently sold under the lien retained by his vendors. The proof is clear that neither this Edgefield lot, nor any part of the proceeds of its sale, ever came to the hands of the vendors of the 5,010 acres of land, and that Nance admits his liability to them for so much of the purchase-money as the lot was intended to pay.

The complainant Murrell excepts to the report so far as it finds that this debt is a lien upon the 5,010 acres, because :

1st. The Edgefield lot was taken from Nance as cash in part payment for the land, " and could not be or have been understood to be a lien on said 5,010 acres."

2nd. Because if a lien, it would not prevail against complainants until every effort had been made and failed to make the money out of Nance.

3d. Because complainants, by their payments for Nance, stand in the shoes of the vendors, and their lien was equal, or superior to that of the vendors.

Upon the first ground of exception, the decree, it will be remembered, expressly refers to the suggestions of the bill that the title to the Edgefield lot had failed, and the company had received no benefit therefrom, and the master is directed to report the exact state of facts, and how much is owing by Nance or Nance and Kimbro. The language of the bill on this point is as follows : " They—complainants—now state that they have understood that in some way the title of William L. Nance to the lot in Edgefield was lost ; that perhaps he failed to pay for it, and after he had sold it to the Oak Vale Barrel Company, or to the individuals composing said corporation, the said owner filed a bill, and caused said property to be sold, and the proceeds applied to the payment of the debts so owing from William L. Nance. Now, if complainants have been correctly informed as to this, then they suppose that the value of said lot, or rather the price at which William L. Nance sold said lot in Edgefield, would be a lien upon said tract of 5,010 acres."

This bill is taken for confessed against the Oak Vale Barrel Company and its members, and the complainants cannot go beyond their own allegations. A decree not warranted by the allegations of the bill is clearly erroneous. Story Eq. Pl., § 405, and cases cited. The complainants concede, on the face of their bill, that if these facts be as alleged, and as the evidence establishes, the price of the Edgefield lot " would be a lien upon the tract of 5,010 acres." Whether they were correct in this supposition, it is useless to inquire. They claim to bring the defendants into court with this concession made to them, and the latter are entitled to hold them to it as long as it remains as a part of the pleadings. It is true that the inference is put in the form of a supposition, and might, therefore, have readily, upon proper application, been allowed to be changed. But it would not be fair to the defendants, who have made no defense to the bill upon the faith of this concession, to allow the complainants now to insist that they were mistaken in their inference.

If, however, we go out of the pleadings and decree, and look to the proof, it sufficiently appears that the Edgefield lot was taken with the knowledge of the fact that there was an existing vendor's lien upon it for unpaid purchase-money, and that Nance was to remove the encumbrance, and retained control of the property until this was done. In other words, as matter of fact, the lot was not taken in absolute payment at the price put upon it, but conditionally at that price, provided prior encumbrances were removed. In this view, Nance would still be indebted for that much of the purchase-money unpaid, and the lien reserved on the face of the deed would attach to it, notwithstanding the change in the form of the security, from a note of $10,000 to a warranty of title to land given in part payment. For, the lien reserved on the face of the deed is for the payment of the original notes " or for any notes substituted for them." The plain meaning of this language is that the lien is to continue until the purchase-money is paid, notwithstanding any change which may be made in the form of the evidences of the indebtedness.

I am not able to concur with the complainants' counsel in the other two grounds relied upon by him to sustain his exception. A vendor is not postponed in the enforcement of an express lien reserved on the face of his deed until he has exhausted his legal remedies against the purchaser, nor does he waive such a lien by accepting additional security. And in this case, the supposed additional security turns out to have been worthless. Nor do I understand that a vendor loses any part of the benefit of such a lien by also taking personal security for the purchase-money, and to allow such sureties equal or superior rights to the vendor where the lands sell for less than the debt, would be to place him in a worse position than if he had taken no personal security at all. The complainants' exception to the clerk's report must, therefore, be disallowed.

Neither the bill, nor the decree makes the slightest *statement of fact* in relation to any lien on the 5,010 acres prior, and superior to the lien of the vendors to Nance. The history of the case commences in the bill with the sale to Nance and Kimbro by the members of the Oak Vale Barrel Company, and the only object of the bill is to settle the rights of these vendors and the purchaser, Nance, and the complainants as his sureties. The decree contains, however, a direction to the master "to report the exact state of facts, and how much and to whom is owing any money which is due from said William L. Nance, or Nance and Kimbro, for said land, or *from any other person*, and which is a lien on said land, and the nature and priority of the liens." It contains also a provision by agreement, that the *pro confesso* order should "not estop Watson and others from setting up any prior lien upon the land as original vendors." But the language thus used must, of course, be construed in connection with the pleadings, and would, under the ordinary rules of interpretation, embrace only such persons as are parties to the suit. The parties seem, however, to have treated this language as meaning more than it says, and as authorizing the clerk and master to take proof

and report upon a claim about which not one word is said in the pleadings or decree, and which is due to persons not in any way parties to the suit. It seems that about the 11th of July, 1857, the individuals who subsequently composed the Oak Vale Barrel Company, bought the 5,010 acres of land from Susan Cheatham, executrix, and E. S. Cheatham, executor of R. Cheatham, deceased, S. Watson and C. Vedder, only one of whom, S. Watson, is a party to this suit, and he merely as a member of the Oak Vale Barrel Company, and one of the vendors to Nance and Kimbro. The purchase thus made was not by the members of the Oak Vale Barrel Company jointly, or as a company, but by each as an individual purchasing and taking a separate deed to an undivided part of said land. The deed to W. Barrow, one of these members, is filed as a specimen of all of them, and is a deed to an undivided one-sixth of said land for the consideration of $4,166.67, secured by the notes of Barrow, and by a lien retained on the land conveyed. It seems that all of these purchasers have paid for their shares of the land thus bought in full, except Barrow, who remains indebted for his one-sixth in the sum reported by the master. The master finds that this debt is not a lien upon the land, "but that they, Cheatham, Watson & Co. are entitled to subject the interest of Barrow in the proceeds of the sale to W. L. Nance for the payment of said balance."

The defendant, Watson, excepts to the conclusion of the clerk and master, because the deed from Cheatham, Watson and Vedder, to Barrow, retains a lien for the purchase-money, which is mentioned in the deed of the Oak Vale Barrel Company to Nance and Kimbro, and that the master should have reported the amount due from Barrow as a prior lien on the undivided sixth of the land sold to him, or the proceeds of the sale thereof to Murrell.

It was urged in argument that the clerk and master should have reported that there was nothing due to Cheatham, Watson & Co., because the proof showed that Watson had received from Nance of the purchase-money agreed to be

paid by him, more than the entire amount of the purchase-money due from the Oak Vale Company to Cheatham, Watson & Co., and that, inasmuch as Watson was a member of the Oak Vale Company, and also one of the original vendors, the law would apply the payments to the satisfaction of the original debt. Upon examination, I find no exception to the report upon which to base this argument. But if there was such an exception, the position seems to me clearly untenable. The law only makes the application of payments as between the creditor and debtor, where neither undertakes to apply the payment at the time when he has the right so to do. But I know of no law which enables a court, where a debtor has made a payment on his debt, to one of a number of joint creditors, to say that that payment shall be applied to the extinguishment of a debt to which the debtor, who makes the payment, is no party. Nance had nothing to do with the debt from Barrow to Cheatham, Watson and Vedder. It is true, the land bought by him was subject, with his knowledge, to a lien for the debt, and he had a right to have insisted upon the encumbrance being removed before he made a payment. If he neglects to do this, a payment by him only extinguishes his own debt.

There being still a balance of purchase-money due from him, he has the right now, by proper proceedings, to insist upon its application to the extinguishment of any prior lien on the land, so as to give him, and the purchasers under him, a good title. If the question is before me by the consent of the parties, as it certainly is not by the pleading and decree, I should have no hesitation in holding that if Cheatham, Watson and Vedder have any lien, it is only on the undivided one-sixth interest sold to Barrow. The only lien reserved is on that one-sixth. There is no lien retained in favor of Cheatham, Watson and Vedder, or given to them, by the deed to Nance and Kimbro. That deed only recognizes the previously existing lien. Its language is: "Upon the above 5,010 acres of land, Cheatham, Watson & Co. hold a lien which is not impaired by this deed." This only

gives notice of the previous lien, without changing it in any way, or conferring any new lien.

That Barrow has not paid the amount of the purchase-money called for in this deed, seems clear. Whether it would be found, upon taking an account between the members of the Oak Vale Barrel Company, that there was anything due to Barrow, either from the company or from Watson as a member, which could be applied in extinguishment of the liability, there is nothing in this record to show. I concur with the clerk and master in his conclusion that, from "the proof on file," it is impossible to ascertain how the indebtedness of Nance to the Oak Vale Barrel Company should be distributed among its members. In the view I take of the case, this is a matter between those parties. Nance, and the complainants as his sureties, and purchasers of the 5,010 acres, are entitled to have so much of the purchase-money still owing by him applied to the extinguishment of any lien upon the land of Cheatham, Watson and Vedder, and this lien, in my opinion, is only on the one-sixth interest sold to Barrow.

But whether any and what sum is due to Cheatham, Watson and Vedder from Barrow, and the extinguishment thereof by applying so much of the money due from Nance, except by consent of parties, cannot be determined in this case, because the proper parties are not before the court, nor the proper pleadings and decrees to raise the issues and make the decision final. Anything the court may do would certainly not be binding on the Cheathams or Vedder, nor, in my opinion, on even the defendant Watson as one of the original vendors. He is not made a party in that capacity, nor does the decree contain enough in the way of recital, considered as an agreement, to bind him in that character.

The result of my opinion upon the case before me is:

That the exceptions by the complainants are disallowed.

That the first exception of Watson is sustained, and the residue disallowed, unless it may be the last, which seems to be unnecessary. Certainly Nance is not entitled to any

of the proceeds of sale until the liens on the land are paid, and his beneficiaries in the deed of trust secured, and so, I understand, the clerk and master to report. But the decree may be so worded as to put the point beyond doubt.

Except by an additional agreement to be entered of record, and to which the Cheathams and Vedder, as well as Watson, are parties, I am of opinion that I can make no binding decision upon the claim of these persons as vendors against Barrow. If the parties can agree upon a decree, they may enter it. Or if they can enter into an agreement binding upon all parties, they may bring any question in dispute again before me. Otherwise, the decree will determine only the questions between the parties now before the court, without prejudice to their rights as between them and parties not in court.